# 12-2693-cv

# United States Court of Appeals
## for the
## Second Circuit

HAINING ZHANG,

*Plaintiff-Appellant,*

– v. –

AMERICAN ORIENTAL BIOENGINEERING, INC., SHU JUN LIU,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

PAULA K. COLBATH
TAL E. DICKSTEIN
LOEB & LOEB LLP
*Attorneys for Defendants-Appellees*
345 Park Avenue
New York, New York 10154
(212) 407-4000

# DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for Defendant/Appellee American Oriental Bioengineering, Inc. ("AOB") certifies that AOB has no parent company and that no publicly held corporation owns 10% or more of its stock.

Dated: October 17, 2012

By: /s/ Paula K. Colbath
LOEB & LOEB LLP
Paula K. Colbath (SBN PC-9895)
pcolbath@loeb.com
Tal E. Dickstein (SBN TD-0928)
tdickstein@loeb.com
345 Park Avenue
New York, NY 10154
Telephone: 212.407.4000
Facsimile: 212.407.4990

*Attorneys for American Oriental Bioengineering, Inc. and Shu Jun Liu*

# Table of Contents

**Page**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF ISSUES .................................................................1

STATEMENT OF THE CASE................................................................2

STATEMENT OF FACTS .................................................................3

    I.    Zhang Allegedly Enters a Commission Agreement and Arranges a Financing Transaction for AOB in 2003 ............................3

    II.   Zhang Learns that AOB Entered a $3 Million Financing Transaction with Other Parties .................................................6

    III.  Zhang Demands that AOB Pay Him the Commission and Issue the Stock Warrants Allegedly Owed to Him Under the 2003 Commission Agreement ...............................................6

    IV.  Zhang Waits Until 2010 to Assert Claims Arising Out of the 2003 Commission Agreement ...............................................7

SUMMARY OF ARGUMENT ...............................................................8

ARGUMENT .................................................................................10

POINT I - ZHANG'S CLAIM THAT DEFENDANTS BREACHED THE 2003 COMMISSION AGREEMENT IS BARRED BY NEW YORK'S SIX-YEAR STATUTE OF LIMITATIONS .................................11

POINT II - ZHANG FAILED TO IDENTIFY ANY FRAUDULENT STATEMENTS, MUCH LESS PLEAD FRAUD WITH PARTICULARITY AS REQUIRED BY RULE 9(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE .................................15

POINT III - ZHANG FAILED TO ALLEGE ANY BASIS FOR CLAIMS AGAINST LIU INDIVIDUALLY .................................................19

POINT IV - ZHANG'S SECOND AMENDED COMPLAINT DOES NOT CURE THE DEFECTS IN HIS AMENDED COMPLAINT AND WAS SUBMITTED IN BAD FAITH .................................................22

i

## Table of Contents

**Page**

CONCLUSION ....................................................................................26

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7) ...............................27

# Table of Authorities

**Page**

Cases

*American Fuel Corp. v. Utah Energy Dev. Co.*,
    122 F.3d 130 (2d Cir. 1997) .............................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .........................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .........................................................................10

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir. 1993) .............................................................11

*Bravado Int'l Grp. Merch. Servs., Inc., v. Ninna, Inc.*,
    655 F. Supp. 2d 177 (E.D.N.Y. 2009) ............................................19

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) .............................................................11

*Dworin v. Deutsch*,
    No. 06 Civ. 13265, 2008 WL 508019 (S.D.N.Y. Feb. 22, 2008) .........18

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
    228 F.R.D. 508 (S.D.N.Y. 2005) ....................................................19

*Freeman v. Complex Computing Co.*,
    119 F.3d 1044 (2d Cir. 1997) ...........................................................21

*Hayden v. Cnty. of Nassau*,
    180 F.3d 42 (2d Cir. 1999) ...............................................................22

*Jaffe v. Capital One Bank*,
    No. 09 Civ. 4106, 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) .............15

*Johnson v. Smithsonian Inst.*,
    189 F.3d 180 (2d Cir. 1999) ...............................................................3

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005) ...............................................8, 12, 16

# Table of Authorities

**Page**

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007) ...............................................................10

*Kopec v. Coughlin*,
    922 F.2d 152 (2d Cir. 1991) .................................................................3

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ..............................................................16

*Malone v. Bayerische Hypo-Und Vereins Bank*,
    Nos. 08 Civ. 7277, 09 Civ. 3676, 2010 WL 391826 (S.D.N.Y. Feb. 4,
    2010), *aff'd*, 425 F. App'x 43 (2d Cir. 2011) .............................11, 17

*Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.*,
    301 F.3d 50 (2d Cir. 2002) ................................................................18

*Morris v. New York State Dept. of Taxation and Finance*
    82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993).........................................20

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*,
    Case No. 03 Civ. 0613, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ...............19

*Premium Mortg. Corp. v. Equifax, Inc.*,
    583 F.3d 103 (2d Cir. 2009) ..............................................................16

*Rossi v. Oristian*,
    50 A.D.2d 44, 376 N.Y.S.2d 295 (4th Dep't 1975)...........................14

*Rotella v. Derner*,
    283 A.D.2d 1026, 723 N.Y.S.2d 801 (4th Dep't 2011) .....................21

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2007) ........................................................ 21-22

*Spira v. J.P. Morgan Chase & Co.*,
    466 F. App'x 20 (2d Cir. 2012) .........................................................10

*Thomas v. Metro. Corr. Ctr.*,
    No. 09 Civ. 1769, 2010 WL 2507041 (S.D.N.Y. June 21, 2010) .....................10

# Table of Authorities

**Page**

**STATUTES**

N.Y. Gen Oblig. L. § 5-701(a)(10) ...........................................................................24

**OTHER AUTHORITIES**

Fed. R. Civ. 9(b)...............................................................................................8, 15, 17

John A. Gebauer, Tom Glavin & Tammy E. Hinshaw, *Carmody-Wait 2d New York Practice with Forms* § 13:226...........................................................14

## <u>STATEMENT OF ISSUES</u>

1.  Did the District Court properly dismiss as barred by New York's six-year statute of limitations Plaintiff/Appellant Haining Zhang's ("Zhang") claim, first asserted in 2010, that Defendant/Appellee American Oriental Bioengineering, Inc. ("AOB") breached a contract with Zhang by refusing to pay him a commision for arranging financing for AOB in 2003?

2.  Did the District Court properly dismiss Zhang's common law fraud claim for failing to allege with particularity any fraudulent statements upon which Zhang reasonably relied, or, in the alternative, as barred by the statute of limitations?

3.  Did the District Court properly dismiss Zhang's claims against Defendant/Appellee Shu Jun Liu ("Liu") for failing to allege that Liu acted in his individual capacity when he signed the 2003 contracts with Zhang "[f]or and on behalf of American Oriental Bioengineering, Inc." as its "Chairman and CEO"?

4.  Did the District Court properly deny Zhang's motion for leave to file a Second Amended Complaint?

## STATEMENT OF THE CASE

This appeal is an attempt by a would-be financing broker, Haining Zhang, to resuscitate stale claims against AOB and its Chairman and CEO, which indisputably arose in 2003 yet were not asserted until 2010, and are therefore barred by the six-year statute of limitations.

On June 23, 2010, Zhang filed a Complaint purporting to assert claims of breach of contract, fraud and breach of fiduciary duty against AOB, and against Liu in his personal capacity, arising from two financing commission agreements executed in 2003. Zhang amended his June 23, 2010 Complaint as of right on August 20, 2010. Defendants moved to dismiss Zhang's Amended Complaint on September 3, 2010. Zhang opposed Defendants' motion on September 30, 2010.

Before the District Court ruled on Defendants' motion to dismiss the Amended Complaint, on October 31, 2010, Zhang filed a motion for leave to file a Second Amended Complaint ("SAC"). Defendants opposed Zhang's motion on November 18, 2010 and Zhang filed a reply on November 29, 2010.

On September 21, 2011, in a well-reasoned decision, the District Court (Hon. Paul G. Gardephe) granted Defendants' motion to dismiss Zhang's Amended Complaint, and denied Zhang's motion to file the SAC (the "Sept. 12, 2011 Order").

Zhang filed a Notice of Appeal from the District Court's September  12, 2011 Order on October 11, 2011.[1]

## STATEMENT OF FACTS

Because this is an appeal from a judgment granting a motion to dismiss and a denial of leave to re-plead, the Court considers only the facts alleged in the pleadings, and documents attached thereto, and accepts them as true for purposes of this appeal.  *See Kopec v. Coughlin*, 922 F.2d 152, 153 (2d Cir. 1991). Accordingly, the following facts are taken from Zhang's Amended Complaint and proposed SAC, and the documents cited therein and attached thereto.[2]

### I.     Zhang Allegedly Enters a Commission Agreement and Arranges a Financing Transaction for AOB in 2003

Zhang alleges that, after meeting AOB's counsel in late 2002, he arranged the sale of $200,000 worth of shares of AOB in January 2003.  (A-11, Am. Cmplt. ¶ 2.)

---

[1]  Zhang subsequently moved "to alter or amend the Court's September 12, 2011 Order and for relief from the judgment," which motion was denied by Order dated June 6, 2012.  Zhang has not appealed from that June 6, 2012 Order and does not mention that Order in his brief.  Accordingly, the only decision on review in this appeal is the September 12, 2011 Order.  *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 n.2 (2d Cir. 1999) (court lacks jurisdiction to consider rulings not referenced in notice of appeal) (citing Fed. R. App. P. 3(c)(1)(B)).

[2]  A copy of Zhang's Amended Complaint, dated August 19, 2010 ("Am. Cmplt.") and his proposed Second Amended Complaint ("SAC"), dated November 1, 2010, with relevant exhibits thereto, are included in Appellees' Appendix (cited to as "A-___"), submitted contemporaneously herewith.

Several months after that stock sale transaction, AOB sent Zhang a signed "advisory/commission agreement" dated March 31, 2003 ("March 2003 Commission Agreement"). (A-11, Am. Cmplt. ¶ 3.) The March 2003 Commission Agreement, a copy of which was attached as Exhibit 7(a) to Zhang's Amended Complaint (*see* A-17 to A-18), provides that, in exchange for arranging a "convertible debenture" financing transaction for AOB, Zhang would be paid a commission of "US $100,000 for every US $1,250,000 convertible debenture arranged for the Company or pro rata" and that 250,000 AOB stock warrants "will be issued" to Zhang – half of the warrants "to be issued" upon closing of the financing transaction, and the other half to be issued "following the Second Tranche." (A-17, Am. Cmplt., Ex. 7(a).) The maturity date of the warrants was to be three years "from the date of issuance." (*Id.*)[3]

The March 2003 Commission Agreement further provided that, "upon successful arrangement of equity line of credit facilities and other instruments with no less than US$ 1,250,000[,]" AOB would appoint Zhang as a consultant for a period of one year on a "non-exclusive basis." (A-18, Am. Cmplt., Ex. 7 at 2.)[4]

---

[3] Zhang incorporated these provisions of the March 2003 Commission Agreement into his Amended Complaint. (A-11, Am. Cmplt. ¶ 3.)

[4] The March 2003 Commission Agreement does not include the amount of compensation Zhang was to be paid for arranging any subsequent financing transaction for AOB. Instead, it provides that Zhang's commission would be "[n]egotiable based on the nature and the monetary value of the transaction and

4

The March 2004 Commission Agreement was signed by Liu "[f]or and on behalf of [AOB]" as its "Chairman and CEO." (A-18, *Id.*)

Zhang alleges that on June 25, 2003 he arranged a $1 million equity line of credit financing transaction for AOB with an entity named Barbell Group (the "AOB/Barbell Transaction"). (A-12, Am. Cmplt. ¶¶ 4-5.)

On July 14, 2003, AOB faxed Zhang a "modified agreement pertinent to the Barbell/AOB transaction" which was dated July 1, 2003 ("July 2003 Commission Agreement"). The July 2003 Commission Agreement, a copy of which was attached as Exhibit 14 to Zhang's Amended Complaint and cited therein, contains the same material terms as the March 2003 Commission Agreement – *i.e.*, (1) a promise by AOB to pay Zhang $100,000 for every $1,250,000 of "convertible debenture" financing he arranged for AOB, (2) a promise that 250,000 stock warrants "will be issued" to Zhang, half of which were "to be issued" upon closing of the financing transaction, and the other half to be issued "following the Second Tranche", and (3) a promise to appoint Zhang as a "non-exclusive" consultant, provided Zhang was able to raise $1,250,000 of financing for AOB. (A-19 to A-20, Am. Cmplt., Ex. 14.)

---

upon successful basis" and that "[i]t shall be covered by separate commission agreement from transaction to transaction basis[.]" (A-18, Am. Cmplt., Ex. 7(a) at 2.)

Like the March 2003 Commission Agreement, the July 2003 Commission Agreement was signed by Liu "[f]or and on behalf of [AOB]" as its "Chairman and CEO[.]" (A-20, *Id.* at 2.)

The March 2003 Commission Agreement and the July 2003 Commission Agreement are collectively referred to as the 2003 Commission Agreement.

## II. Zhang Learns that AOB Entered a $3 Million Financing Transaction with Other Parties

Zhang alleges that, as a result of a July 22, 2003 SEC filing, Zhang learned that AOB had entered a $3 million financing transaction with BH Capital Investments, LP and Excalibur Limited Partnership, who were not Zhang's clients (the "BH Capital/Excalibur Transaction"). (A-12, Am. Cmplt. ¶ 7.)

## III. Zhang Demands that AOB Pay Him the Commission and Issue the Stock Warrants Allegedly Owed to Him Under the 2003 Commission Agreement

On April 23, 2004, Zhang wrote to AOB executive Clarence Chan and "asked on [*sic*] the warrants on AOB" that were allegedly owed to him under the 2003 Commission Agreement. (A-13, Am. Cmplt. ¶ 9.) In response, Chan allegedly "tried to discourage Plaintiff to get [*sic*] the warrants by claiming AOB cooked its books and the warrants were not worthy [*sic*] much in value." (*Id.*)

Zhang was not dissuaded. On June 14, 2004, less than two months later, Zhang again demanded in writing that AOB issue the warrants allegedly owed to him under the 2003 Commission Agreement. (A-13, Am. Cmplt. ¶ 10) ("On June

6

14, 2004, Plaintiff faxed Defendant AOB and Defendant Shu Jun Liu, CEO of

AOB, signed commission agreement dated on July 1, 2003 requesting 125,000

warrants as well as the $80,000 cash commission as promised.")  Zhang attached to

his SAC a copy of his June 14, 2004 letter, which stated:

> On July 1st, 2003, AOB[] agreed to issue me 125,000 shares of
> warrants with option at $0.50/per to purchase your company's
> common stock with a piggy-back registration right.  Since then, I have
> contacted you and Mr. Chan for several months regarding the matter.
> However, I still haven't gotten a satisfied answer so far.  (A-45, Am.
> Cmplt., Ex M-3.)

Zhang even flew to Beijing to meet with AOB executives in order to demand the

warrants and commission payment, and he contacted AOB "numerous times by

email and phone calls on the warrants".  (A-13, Am. Cmplt. ¶¶ 11-12.)

## IV. Zhang Waits Until 2010 to Assert Claims Arising Out of the 2003 Commission Agreement

Zhang filed a Complaint on June 23, 2010 and an Amended Complaint on

August 20, 2010, naming as Defendants AOB as well as Liu as "CEO of AOB".

(A-9, Am. Cmplt., *caption*.)  Zhang's Amended Complaint purports to assert three

claims against "Defendant" (without specifying which Defendant):  (1) breach of

contract for "failure to pay the obligated commission in the written agreements"

("Count 1");  (2) "fraudulent dealing" ("Count 2");  and (3) breach of fiduciary

duty based on Defendants' "violating its obligation defined in the signed agreements" ("Count 3").[5] (A-15, Am. Cmplt. at 7.)

## SUMMARY OF ARGUMENT

Zhang's breach of contract claim is indisputably time-barred. Zhang alleges that AOB was obligated to pay him a cash commission and issue stock warrants to him when the AOB/Barbell transaction closed in June 2003. Yet, even though AOB consistently denied any obligation to pay Zhang a commission or to issue him warrants, Zhang inexplicably waited more than seven years to file a claim. Zhang's breach of contract claim is thus barred by New York's six-year statute of limitations.

Zhang fails to allege any facts that support his fraud claim, much less plead the circumstances of fraud with particularity as required by Fed. R. Civ 9(b). Zhang cannot point to any alleged misstatements by AOB or Liu upon which Zhang reasonably relied to his detriment. Indeed, Zhang's fraud claim appears to be nothing more than a dressed-up breach of contract claim, alleging that AOB entered the 2003 Commission Agreement with an intent not to perform its

---

[5] Zhang does not argue that the District Court's dismissal of his breach of fiduciary duty claim was somehow improper. He has therefore waived any such argument, and the dismissal of his breach of fiduciary duty claim should be affirmed. *See JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief.").

contractual obligations. Because a fraud claim alleging intent not to perform a contract is duplicative of a claim for breach of contract, Zhang's fraud claim fails as a matter of law.

Because Zhang fails to assert any cognizable claims against AOB, his attempt to pierce the corporate veil to hold Liu liable on those underlying claims are simply irrelevant. Even if any of Zhang's underlying claims against AOB survived, which they do not, Zhang has failed to allege any facts that might support holding Liu liable in his individual capacity, especially given that Liu signed the 2003 Commission Agreement "[f]or and on behalf of [AOB]" as its "Chairman and CEO."

Zhang's proposed Second Amended Complaint represents a bad faith attempt to circumvent the statute of limitations by alleging that AOB supposedly "orally ratified" the 2003 Commission Agreement at a June 25, 2004 meeting, even though Zhang acknowledges that, at that meeting, AOB denied any obligation to pay Zhang a commission or to issue him warrants. Any alleged oral promise to compensate Zhang for arranging a financing transaction is also barred by New York's statute of frauds. Zhang's motion for leave to file the Second Amended Complaint was thus properly denied.

# ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, where the plaintiff's allegations do not demonstrate an "entitlement to relief," or where a plaintiff has "not nudged [her] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed." *Twombly*, 550 U.S. at 558, 570.

Although courts construe *pro se* complaints more liberally,[6] as in any other case, "the Court accepts as true only factual allegations, and does not accept as true allegations stating only legal conclusions." *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *2 (S.D.N.Y. June 21, 2010).

---

[6] Although Zhang claims to be proceeding *pro se*, he seeks reimbursement of his "attorney fees" and his brief is replete with legal citations. (*See* A-16, Am. Cmplt. at 8 "Damages"; Zhang's Br., *passim*.) Zhang is therefore "not entitled to 'claim the special consideration which the courts customarily grant to pro se parties.'" *Spira v. J.P. Morgan Chase & Co.*, 466 F. App'x 20, 22 (2d Cir. 2012) (plaintiff claimed to be proceeding *pro se* but had an attorney "ghostwrite" his briefs) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n. 4 (2d Cir. 2001)).

10

"When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' complaint and to documents attached to the complaint as an exhibit[.]" *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (alterations omitted); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("[t]he complaint is deemed to include any written instrument attached to it as an exhibit").

## POINT I

### ZHANG'S CLAIM THAT DEFENDANTS BREACHED THE 2003 COMMISSION AGREEMENT IS BARRED BY NEW YORK'S SIX-YEAR STATUTE OF LIMITATIONS

New York's[7] statute of limitations for breach of contract is six years from the time of the breach, regardless of when the damage occurs. *See Malone v. Bayerische Hypo-Und Vereins Bank*, Nos. 08 Civ. 7277, 09 Civ. 3676, 2010 WL 391826, at *4-5 (S.D.N.Y. Feb. 4, 2010) ("The statute of limitations for breach of contract claims is six years . . . . '[A] breach of contract cause of action accrues at the time of the breach' and the statute of limitations 'runs from the time of the breach though no damage occurs until later.'") (citing N.Y. CPLR § 213(2) and quoting *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501 (1993), *aff'd*, 425 F. App'x 43 (2d Cir. 2011)).

---

[7] Zhang alleges that the events giving rise to his claims occurred in "Manhattan, New York City." (A-11, Am. Cmplt. at 3.)

As the District Court recognized, "Zhang . . . argues that AOB breached the March 31 and July 1 Agreements when it failed to pay him a commission, and failed to issue warrants to him, after the AOB/Barbell transaction closed." (A-52, Sept. 12, 2011 Order at 7) (citing Pl.'s Opp. Aff. ¶ 12) ("The funding from Barbell Group was provided on June 25, 2003 and on the same day AOB should [have] issue[d] Plaintiff 125,000 cashless warrants . . . under [the] July 1[,] Commission Letter.") (alterations in Sept. 12, 2011 Order); (*See also* A-12, Am. Cmplt. ¶¶ 4-5.)[8] The District Court therefore concluded that "Zhang's breach claim began running on June 25, 2003 – to the extent it is based on the Barbell deal" (A-52, Sept. 12, 2011 Order at 7) and held that Zhang's breach of contract claim was time-barred "[b]ecause this suit was not filed until June 23, 2010 – nearly seven years later[.]" (A-53, Sept. 12, 2011 Order at 8).

On appeal, Zhang now argues that the 2003 Commission Agreement itself constituted the warrants for AOB stock, and that AOB breached that agreement, not by failing to issue the warrants as he alleged in his pleadings and argued in the District Court, but by somehow refusing to honor Zhang's attempts to exercise

---

[8] Zhang does not argue that AOB somehow breached the 2003 Commission Agreement by entering the BH Capital/Excalibur Transaction, and has therefore waived any such argument. *See JP Morgan Chase Bank*, 412 F.3d at 428. In any event, any such allegation would be time-barred because the BH Capital/Excalibur Transaction closed at least as of AOB's SEC filing on July 22, 2003 – more than six years before Zhang filed his June 23, 2010 Complaint.

warrants that had not yet been issued. (*See e.g.,* Zhang's Br. at 6) (Zhang is "seeking compensation for the warrants issued to him in accordance with the commission agreement between the parties.")

Zhang's newfound argument must be rejected because it directly contradicts his own pleadings and the 2003 Commission Agreement itself. Both the March 2003 and July 2003 Commission Agreements, which are attached to Zhang's Amended Complaint and SAC, constitute a promise to issue formal stock warrants *in the future*. (*See* A-17, Am. Cmplt., Ex. 7(a); A-19, Am. Cmplt., Ex. 14,) ("A total of two hundred and fifty hundred [*sic*] thousand free warrants, with a piggy-back rights, *will be issued* to Holder under the following terms: [] Date of issuance: 125,000 warrants *to be issued* upon immediate closing and 125,000 *following the Second Tranche*.") (emphasis added).

Indeed, Zhang fully understood that the 2003 Commission Agreement was not itself a stock warrant, but rather a promise to issue formal stock warrants in the future. In his Amended Complaint, Zhang described the July 2003 Commission Letter as providing that "Hainging Zhang the Plaintiff *would get* a total of 250,000 warrants, 125,000 warrants at closing of an equity line of credit and 125,000 warrants after the first drawdown." (A-12, Am. Cmplt. ¶ 5) (emphasis added).[9]

---

[9] Zhang appears to argue, for the first time on appeal, that the January 2003 stock sale triggered AOB's obligation to issue him the first tranche of 125,000 stock warrants under the 2003 Commission Agreement. (Zhang's Br. at 7.) Yet Zhang's

13

Zhang also alleged that, on June 14, 2004, he sent a letter to AOB "*requesting*

125,000 warrants as well as the $80,000 cash commission as promised" (A-13, *id.*

at ¶ 10) (emphasis added) and that he traveled to Beijing "for the purpose of

convincing Defendant *to issue* the warrants and to pay the cash commission" (A-

13, *id.* at ¶ 11) (emphasis added).  If the 2003 Commission Agreement was itself a

warrant for AOB stock as Zhang now claims, Zhang would have had no reason to

demand that AOB issue him warrants.

     Moreover, even if the 2003 Commission Agreement could be construed as a

warrant to purchase stock of AOB—which it cannot— Zhang's contract claim

would still be time-barred.  The statute of limitations on a stock warrant or stock

option contract begins to run when the holder makes a demand for the stock.  *See*

*Rossi v. Oristian*, 50 A.D.2d 44, 46, 376 N.Y.S.2d 295, 297 (4th Dep't 1975)

(statute of limitations on stock option agreement begins to run when "person

granted the option demands the stock") (collecting cases); 2B John A. Gebauer,

Tom Glavin & Tammy E. Hinshaw, *Carmody-Wait 2d New York Practice with*

*Forms* § 13:226 ("The statute of limitations for an action to specifically enforce a

---

pleadings and the 2003 Commission Agreement itself make clear that AOB's obligation to issue warrants was contingent on the "convertible debenture" financing transaction with Barbell Group, not a stock sale.

stockholder's option agreement runs from the date on which the plaintiff makes a demand under the option agreement.")[10]

As discussed above, Zhang alleges that in 2003 and early 2004 he repeatedly demanded the stock and commission payment allegedly owed to him under the 2003 Commission Agreement. Thus, even assuming the 2003 Commission Agreement could be construed as a warrant to purchase AOB stock, Zhang made a demand under that agreement more than six years before he commenced this action on June 23, 2010, and his contract claim is therefore time-barred.

## POINT II

### ZHANG FAILED TO IDENTIFY ANY FRAUDULENT STATEMENTS, MUCH LESS PLEAD FRAUD WITH PARTICULARITY AS REQUIRED BY RULE 9(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE

"The elements of fraud under New York law are: (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury." *Jaffe v. Capital One Bank*, No. 09 Civ. 4106, 2010 WL 691639, at *6 (S.D.N.Y. Mar. 1, 2010).

---

[10] Zhang acknowledges that a breach of contract claim accrues upon demand to exercise a stock warrant. *See* Zhang's Br. at 14 ("the statute of limitations did not begin to run until after the refusal to pay the demand.")

15

Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud[.]" Fed.R.Civ.P. 9(b). Courts have interpreted Rule 9(b) to require that the complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). "'Allegations that are conclusory or unsupported by factual assertions are insufficient'" to state a claim for fraud. *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).

As the District Court recognized, "[t]he basis for Zhang's fraud claim is unclear." (A-53, Sept. 12, 2011 Order at 8,.) Indeed, Zhang's claim for "fraudulent dealing" merely states that "Defendant's fraudulent behavior has caused a substantial harm to the Plaintiff's professional activities." (A-15, Am. Cmplt. at 7 "Count 2".) Nowhere does Zhang explain what statements form the basis of his fraud claim, nor does he explain why those statements are allegedly fraudulent. The District Court nevertheless scoured Zhang's Amended Complaint searching for any allegations that could plausibly state a claim for fraud – and it found none. (A-53 to A-55, Sept. 12, 2011 Order at 8-10.)

16

On appeal, Zhang does not challenge the District Court's dismissal of his fraud claim for failure to state a claim, and he fails to point to any allegedly misleading statements that could possibly support that claim. Zhang has thereby waived any such argument, and the dismissal of his fraud claim should be upheld. *See JP Morgan Chase Bank*, 412 F.3d at 428.

In arguing that the District Court improperly dismissed his fraud claim as time-barred, however, Zhang does state that he "learned of the fraud perpetrated upon him by LIU and AOB at the expiration of the warrants in or about (2006)" and that he "discovered that AOB and LIU had misrepresented the value of the warrants in or about 2007." (Zhang's Br. at 15.) Zhang does not explain how or why Defendants allegedly "misrepresented the value of the warrants[.]" As the District Court recognized, however, to the extent Zhang argues that Chan's statements in April 2004 dissuaded Zhang from seeking the warrants allegedly owed to him under the 2003 Commission Agreement, Zhang cannot plead reliance, as he repeatedly demanded the warrants in June 2004, less than two months later. (A-54, Sept. 12, 2011 Order at 9.)

Moreover, any fraud claim based on Chan's April 2004 statements would be foreclosed by the statute of limitations, because they were made more than six years before Zhang filed suit in June 2010. *See Malone v. Bayerische Hypo-Und Vereins Bank*, 2010 WL 391826, at *4 ("Under New York law, the statute of

17

limitations for 'an action based upon fraud' is 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . could with reasonable diligence have discovered it.'") (quoting N.Y. CPLR § 213(8) and citing *Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007)).

To the extent Zhang argues that Defendants entered the 2003 Commission Agreement with an intent not to perform by refusing to pay a commission and to issue stock warrants, Zhang's fraud claim is duplicative of his breach of contract claim, and was properly dismissed. (*See* A-54, Sept. 12, 2011 Order at 9, n. 6) ("[U]nder New York law, 'where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.'") (quoting *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001)).

In sum, Zhang points to no false or misleading statements upon which he reasonably relied to his detriment. A party defending a fraud claim should not be left to guess at the basis of the claim. That is why Rule 9(b) requires that the circumstances of fraud be pled with particularity. Because Zhang completely fails to identify any statements that could make out a claim for fraud, or to explain why any such statements are fraudulent, his fraud claim was properly dismissed.

## POINT III

## ZHANG FAILED TO ALLEGE ANY BASIS FOR CLAIMS AGAINST LIU INDIVIDUALLY

"In New York, '[w]here a principal of a corporation expressly signs a contract in his or her capacity as an officer of the corporation, unless he or she purports to personally bind him or herself, he or she will not be held personally liable under the contract.'" *Dworin v. Deutsch*, No. 06 Civ. 13265, 2008 WL 508019, at *8 (S.D.N.Y. Feb. 22, 2008) (quoting *Maranga v. McDonald & T. Corp.,* 8 A.D. 3d 351, 352 (2d Dep't 2004)). Moreover, "[a] corporate officer is only personally bound when there is, 'clear and explicit evidence of the [officer]'s intention to substitute or superadd his personal liability for, or to, that of [the corporation].'" *Dworin*, 2008 WL 508019, at *8 (quoting *Mencher v. Weiss,* 306 N.Y. 1, 4 (1953)); *see also Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.,* 301 F.3d 50, 52-54 (2d Cir. 2002) ("New York law requires that there be 'clear and explicit' evidence of the defendant's intent to add personal liability to the liability of the entity"; "the appearance of only one signature, especially when that signature is in [the individual's] official capacity" supports a finding that the officer did not intend to be personally bound).

The District Court correctly recognized that "Zhang has not alleged any facts suggesting that Liu took any actions in his individual capacity." (A-51, Sept. 12,

19

2011 Order at 6.)  Nor could he.  Liu signed the 2003 Commission Agreement "[f]or and on behalf of [AOB]" as its "Chairman and CEO."  (A-17 and A-19, Am. Cmplt., Exs. 7(a), 14.)  This is the hallmark of acting as a corporate representative, rather than in one's individual capacity.

On appeal, Zhang baldly asserts that Liu should be held personally liable because he "exercised control and domination over AOB."  (Zhang's Br. at *passim*)  Yet Zhang offers absolutely no facts whatsoever to support this conclusory assertion, much less any facts that would support piercing the corporate veil, such as disregard of the corporate form or co-mingling of assets.  The dismissal of Zhang's claims against Liu should therefore be affirmed.  *See EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (dismissing claim to pierce corporate veil where allegations were "conclusory"); *Bravado Int'l Grp. Merch. Servs., Inc.*, *v. Ninna, Inc.*, 655 F. Supp. 2d 177, 197 (E.D.N.Y. 2009) ("Plaintiff's claim is therefore too vague and conclusory to allege alter ego liability" where Plaintiff offered only "legal conclusions which the Court need not accept."); *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, Case No. 03 Civ. 0613, 2004 WL 112948, at *7 (S.D.N.Y. Jan. 22, 2004) ("Outside of their conclusory allegations of control, the complaint is devoid of any factual allegations to support a finding of alter-ego.

Without any supportive factual allegations, plaintiffs have failed to allege sufficient facts to avoid dismissal of their alter ego claim.")

Indeed, Zhang argues that "Liu secured Mr. Zhang's services for the purpose of acquiring investment capital *for AOB*" (Zhang's Br. 12) (emphasis added) – not for Liu's personal benefit – and Zhang specifically alleged that AOB approved the AOB/Barbell Transaction and related commission agreements through a proper corporate resolution. (A-33, SAC ¶ 11 at 9.) Thus, not only is Zhang's attempt to hold Liu personally liable unsupported by any factual allegations, it is directly undercut by Zhang's own pleadings.

Finally, even if the Court were to somehow conclude that AOB's corporate form should be disregarded—which it should not—there is still no basis for holding Liu personally liable. An attempt to invoke alter ego liability "does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." *Morris v. New York State Dept. of Taxation and Finance*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810 (1993); *see also American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) ("Typically, piercing analysis is used to hold individuals liable for the actions of a corporation they control."); *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997) (even where defendant completely controlled corporation,

21

"New York law will not allow the corporate veil to be pierced in the absence of a showing that this control was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights") (quotations omitted). Because Zhang has failed to plead any substantive claims against AOB for the reasons discussed above, his alter-ego claims against Liu were properly dismissed.

Zhang's reliance on *Rotella v. Derner*, 283 A.D.2d 1026, 723 N.Y.S.2d 801 (4th Dep't 2011) is misplaced. (Zhang's Br. at 12.) That case involved an attempt to hold a corporate owner personally liable for an underlying judgment against the corporation. *Id.* at 1027, 723 N.Y.S. at 802. Here, there is no basis for any claims against AOB, much less any outstanding judgment. Moreover, the plaintiff in *Rotella* pointed to evidence of corporate undercapitalization and a "disregard of corporate formalities and personal use of corporate funds." *Id.* at 1027. Zhang has alleged no such facts here.

## POINT IV

### ZHANG'S SECOND AMENDED COMPLAINT DOES NOT CURE THE DEFECTS IN HIS AMENDED COMPLAINT AND WAS SUBMITTED IN BAD FAITH

Although leave to amend is often freely granted, it is properly denied in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.

2007) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Thus, "where the

plaintiff is unable to demonstrate that he would be able to amend his complaint in a

manner which would survive dismissal, opportunity to replead is rightfully

denied." *Hayden v. Cnty. of Nassau,* 180 F.3d 42, 53 (2d Cir. 1999).[11]

Zhan's proposed Second Amended Complaint repeated the allegations that

made the claims in his Amended Complaint untimely, including attaching the 2003

Commission Agreement, references to the June 25, 2003 AOB/Barbell Transaction

that allegedly triggered AOB's  obligations under the 2003 Commission

Agreement, and Zhang's repeated demands in 2003 and early 2004 that AOB pay

the commission and issue the warrants.  (*See, e.g.,* A-32, SAC ¶ 10) ("on January

19, 2004 . . . Plaintiff contacted Chan on issuing the warrants to Plaintiff for the

compensation of the AOB/Barbell transaction"); (A-32, SAC ¶ 11) ("On June 14,

2004 Plaintiff faxed Defendants a demanding letter [*sic*] requesting 125,000

warrants as well as the $80,000 cash commission as promised.").

---

[11] Although Zhang argues that "as a matter of right Mr. Zhang is entitled to amend his complaint one-time without leave in order to confirm the pleadings to the facts learned or relevant to the matter" (Zhang's Br. at 17), he overlooks the fact that he already used his opportunity to amend once as of right when he filed the Amended Complaint.

In a transparent attempt to circumvent the statute of limitations, Zhang alleged in his SAC that Defendants "orally ratified" the 2003 Commission Agreement at a meeting with AOB executives in Beijing on June 25, 2004. (A-33, SAC ¶ 12.) As the District Court recognized, however, even if AOB had orally promised to pay Zhang a commission or to issue warrants to him, such a promise would be unenforceable under the statute of frauds, which provides that "contracts to pay compensation for services rendered in negotiating a loan" are unenforceable unless in writing. (Sept. 12, 2011 Order at 12) (quoting N.Y. Gen Oblig. L. § 5-701(a)(10) and collecting cases).[12]

Zhang's SAC also blatantly contradicts his earlier pleadings in order to gain a tactical advantage. Although Zhang alleged in his Amended Complaint that the January 2003 stock sale he arranged had generated $200,000 for AOB (A-11, Am. Cmplt. ¶ 2), he alleged in the SAC that the stock sale generated *$300,000*, which, if

---

[12] New York's statute of frauds, N.Y. Gen. Oblig L. § 5-701(a)(10), provides, in pertinent part:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> . . .
>
> Is a contract to pay compensation for services rendered in negotiating a loan . . . or of a business opportunity . . . . "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction.

combined with the $1 million AOB/Barbell Transaction, could have met the $1,250,000 financing threshold required to trigger the consulting provisions of the 2003 Commission Agreement. (A-27, SAC ¶ 2.) Zhang then tried to leverage that dubious assertion by arguing that AOB somehow breached Zhang's consulting appointment by approaching Barbell's attorney for a possible deal in September 21, 2004. (A-38, SAC ¶ 19.)

Even if the consulting provisions of the 2003 Commission Agreement had been triggered, however, they would not save Zhang's claims. The consulting appointment was expressly "non-exclusive" and would therefore not prevent AOB from merely contacting another potential source of financing. In any event, assuming Zhang's consulting appointment did take effect, it was to last for only one year commencing on July 1, 2003, and would therefore have expired prior to September 21, 2004 when AOB allegedly contacted Barbell. (A-17 and A-19, Am. Cmplt., Exs. 7(a), 14,.)

Zhang's willingness to blatantly contradict his prior allegations in order to gain litigation advantage demonstrates that his motion to file the SAC was made in bad faith. The District Court was thus fully justified in denying Zhang's motion to file the SAC.

## CONCLUSION

For all of the foregoing reasons, Appellees respectfully ask the Court to

affirm the District Court's September 12, 2011 Order dismissing Zhang's

Amended Complaint and denying Zhang's motion for leave to file the Second

Amended Complaint.

Dated: October 17, 2012        Respectfully submitted,

By:*/s/ Paula K. Colbath*
       Paula K. Colbath (SBN PC-9895)
       pcolbath@loeb.com
       Tal Dickstein (SNB TD-0928)
       tdickstein@loeb.com
       LOEB & LOEB LLP
       345 Park Avenue
       New York, NY 10154
       Telephone: 212.407.4000
       Facsimile: 212.407.4990

       *Attorneys for Appellees/Defendants*
       *American Oriental Bioengineering, Inc.*
       *and Shu Jun Liu*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)

1.      This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 5,975 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

Dated:  October 17, 2012

By: /s/ Paula K. Colbath
    Paula K. Colbath (SBN PC-9895)
    pcolbath@loeb.com
    Tal Dickstein (SNB TD-0928)
    tdickstein@loeb.com
    LOEB & LOEB LLP
    345 Park Avenue
    New York, NY 10154
    Telephone: 212.407.4000
    Facsimile: 212.407.4990

    *Attorneys for Defendants/Appellees*
    *American Oriental Bioengineering, Inc.*
    *and Shu Jun Liu*

NY1144595.2
207785-10025

27